**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DARRYL PUDERER**                                          **CIVIL ACTION**

**VERSUS**                                                          **NO. 17-324**

**DARREL VANNOY, WARDEN**                     **SECTION: "A"(3)**

**REPORT AND RECOMMENDATION**

     This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

     Petitioner, Darryl Puderer, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola Louisiana. On May 11, 2010, he was charged by a bill of information in the Parish of Orleans with two counts of second degree kidnapping and two counts of forcible rape.[1] On August 7, 2012, Puderer pleaded guilty as to all counts.[2] The state trial court sentenced Puderer that same day to concurrent terms on each count of twenty years in prison at hard labor.[3] He did not file an appeal.[4]

---

[1] State Rec. Vol. 1 of 7, Bill of Information, 5/11/10.
[2] State Rec. Vol. 2 of 7, Minutes, 8/7/12; State Rec. Vol. 3 of 7, Boykin Colloquy and Sentencing Transcript, 8/7/12.
[3] State Rec. Vol. 2 of 7, Minutes, 8/7/12; State Rec. Vol. 3 of 7, Boykin Colloquy and Sentencing Transcript, 8/7/12.
[4] Rec. Doc. 4, answer to question 8.

On September 3, 2014, Puderer filed a pro se application for post-conviction relief with the state district court.[5] On September 5, 2014, Puderer, through private counsel, filed an application for post-conviction relief.[6] The state district court denied petitioner's applications on March 3, 2015, finding petitioner's claims to be procedurally barred or without merit.[7] The Louisiana Fourth Circuit Court of Appeal denied petitioner's counseled application for supervisory writ finding "the trial court did not abuse its discretion in the March 3, 2015 denial of relator's counseled and *pro se* applications for post-conviction relief."[8] On October 17, 2016, the Louisiana Supreme Court denied petitioner's application for review finding he failed to show he was denied effective assistance of counsel during plea negotiations under Strickland v. Washington, 466 U.S. 668 (1984), and his remaining claims repetitive or unsupported under La. Code Crim. P. arts. 930.2 and 930.4, and attached and made a part thereof the state district court's oral reasons for denying the application.[9]

On January 10, 2017, petitioner filed the instant federal application seeking habeas corpus relief.[10] The state has filed a response arguing that the application is untimely.[11] Petitioner has filed a reply and several supplements admitting his application is untimely but arguing equitable tolling is warranted.[12] For the following reasons, the undersigned finds that petitioner's federal application was in fact untimely.

---

[5] State Rec. Vol. 3 of 7, Pro Se Application for Post-Conviction Relief, signed 9/3/14.
[6] State Rec. Vol. 3 of 7, Application for Post-Conviction Relief, 9/5/14.
[7] State Rec. Vol. 2 of 7, Minutes, 3/2/15; State Rec. Vol. 7 of 7, Transcript, 3/2/15.
[8] State Rec. Vol. 6 of 7, 4th Cir. Order, 2015-K-0468, 6/17/15; Application for Writ, 2015-K-0468, 5/4/15.
[9] State ex rel. Puderer v. State, 202 So.3d 978 (La. 2016) (per curiam); State Rec. Vol. 7 of 7, La. Supreme Court Order, 15-KH-1359, 10/17/16.
[10] Rec. Doc. 4.
[11] Rec. Doc. 12.
[12] Rec. Docs. 17, 18, 19, 20.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner argues that the state's failure to provide him with copies of records from his case file impeded his ability to seek relief in a timely manner. The state counters that petitioner's argument is meritless. The state is correct, in that federal courts have repeatedly held that problems associated with obtaining transcripts and trial records do not amount to "state-created impediments" triggering Subsection (B). See, e.g., Pitre v. Cain, Civ. Action No. 6:15-cv-2438, 2016 WL 1371206, at *6-7 (W.D. La. Jan. 21, 2016), adopted, 2016 WL 1367300 (W.D. La. Apr. 4, 2016); Cook v. Cain, Civ. Action No. 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015); Crain v. Director, TDCJ-CID, Civ. Action No. 6:11cv214, 2012 WL 651730, at *3 (E.D. Tex. Feb. 27, 2012); Plummer v. Mississippi Department of Corrections, Civ. Action No. 4:11cv6,

2011 WL 6965656, at *4 (S.D. Miss. Dec. 16, 2011), adopted, 2012 WL 70349 (S.D. Miss. Jan. 9, 2012).

Regarding Subsection (B), the United States Fifth Circuit Court of Appeals has explained: "In order to invoke § 2244(d)(1)(B), the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) *in violation of the Constitution or federal law*." Egerton v. Cockrell, 334 F.3d 433, 436 (5th Cir. 2003) (emphasis added); accord Wickware v. Thaler, 404 F. App'x 856, 862 (5th Cir. 2010) (A petitioner "can only prevail in applying § 2244(d)(1)(B) by showing that the state's actions were so egregious as to constitute a violation of the United States Constitution." (emphasis added)).  In this case, petitioner's argument that Subsection (B) applies fails for two reasons: the state's delay in providing him with transcripts and other records neither violated the federal Constitution nor "prevented" him from seeking relief.

As an initial matter, it must be noted that the United States Constitution does not automatically require that a prisoner be provided upon request with a free copy of a transcript for the purposes of seeking collateral review.  See, e.g., United States v. MacCollom, 426 U.S. 317, 323-24 (1976); Deem v. Devasto, 140 F. App'x 574, 575 (5th Cir. 2005); Crawford v. Costello, 27 F. App'x 57, 59 (2nd Cir. 2001) ("Under 28 U.S.C. § 2244(d)(1)(B), the statute of limitations may be tolled during the time that a state-created unconstitutional impediment prevents the petitioner from filing a petition.  Because there is no constitutional right to a trial transcript for collateral appeals, the state's denial of his request for a transcript did not constitute an unconstitutional impediment sufficient to toll the statute of limitations.").

Further, in any event, the state-court delays in providing petitioner with copies of transcripts and other records in no way "prevented" him from seeking relief.  He was present in court and, therefore, aware of the alleged defects in the proceedings.  Accordingly, *even without*

4

*copies of the transcripts*, he could have filed a state post-conviction application asserting the instant claims. See Brown v. Cain, 112 F. Supp. 2d 585, 587 n.2 (E.D. La.) ("Because an inmate does not have an automatic right to free transcripts, the Louisiana State Courts accept post-conviction relief applications without transcripts attached."), aff'd, 239 F.3d 365 (5th Cir. 2000); State ex rel. Bernard v. Criminal District Court Section "J," 653 So.2d 1174, 1175 (La. 1995) (holding that a prisoner who has "identified with factual specificity ... constitutional claims he argues will entitle him to post conviction relief" may "file an application which lacks any supporting documentation without fear of summary dismissal under La.C.Cr.P. art. 926(E)."). Upon filing such an application "identif[ying] specific constitutional errors in the proceedings leading to his conviction and sentence," he would then have been entitled to a free copy of the transcripts under state law simply by showing a "particularized need" for them, i.e. by demonstrating that they were necessary to resolve his claims fairly. Bernard, 653 So.2d at 1175.

**Further, while those proceedings were pending in the state courts, petitioner could also have timely filed a protective federal habeas corpus petition and asked that the federal proceedings be stayed while he pursued his state-court remedies.** See, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 416-17 (2005); Madden v. Thaler, 521 F. App'x 316, 321 (5th Cir. 2013); Cook v. Cain, Civ. Action No. 15-1882, 2015 WL 6702290, at *3 (E.D. La. Nov. 3, 2015). Additionally, petitioner admits that, by December 2012, he had at least some of the records from his case, including his Boykin colloquy, which included a recitation of the facts alleged against him.[13] As a result, the state-court delay in providing the transcripts and other records in no way "prevented" petitioner from seeking relief.

---

[13] Rec. Doc. 4, p. 26 ("I gave inmate counsel Brooks my legal documents and explained to him the facts and circumstances of my case as I understood them and of the possible grounds for post conviction relief."); Rec. Doc. 17-9, p. 2 ("I received my *Boykin* colloquy, Docket Master Record, and sentencing transcript from the Orleans Parish Clerk of Court on December 13, 2012.")

Petitioner additionally argues that he was faced with another state-created impediment, namely the lack of access to the prison law library at the Louisiana State Penitentiary and difficulty in securing an adequate inmate counsel substitute. Petitioner contends that from October 2012 when he arrived at Louisiana State Penitentiary until August 2013, he was placed in administrative segregation and denied access to the law library. He further contends that his inmate counsel substitute opined that he had no meritorious claims and refused to help him file a state application for post-conviction relief and that he was not able to secure assistance from another inmate until November 2013.

It is true that, in some circumstances, that "an inadequate prison law library may constitute a state created impediment" for purposes of Subsection (B). Egerton, 334 F.3d at 439. However, "[w]hether a prisoner has demonstrated the existence of a state-created impediment is highly fact dependent." Funk v. Thaler, 390 F. App'x 409, 410 (5th Cir. 2010) (per curiam).

Regarding the right of access, the United States Fifth Circuit Court of Appeals has explained:

> "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Brewer v. Wilkinson, 3 F.3d 816, 821 (5th Cir. 1993) (footnote omitted). This right prohibits state prison officials from actively interfering with inmates' attempts to prepare or file legal documents. Lewis v. Casey, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Manning v. Sumlin, 540 F. App'x 462 (5th Cir. 2013) (per curiam). Furthermore, to prevail on such a claim, a petitioner cannot simply allege that a legal library or other form of assistance was inadequate. The Supreme Court has cautioned that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense .... [T]he inmate must go one step further and demonstrate that the alleged

6

shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996) (noting that there is no "abstract, freestanding right to a law library or legal assistance"); see also Krause v. Thaler, 637 F.3d 558, 561 (5th Cir. 2011) (petitioner must show "the lack of adequate legal materials actually *prevented* him from timely filing his habeas petition."). As examples, the Supreme Court noted a petitioner might show "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." Lewis, 518 U.S. at 351.

Puderer has not made the requisite showing based on his allegations with respect to his access to the law library and scope of legal assistance in order to demonstrate a state-created impediment under § 2244(d)(1)(B). His contention that officials impeded his access to legal materials is entirely without foundation, given that he admits he could have requested any caselaw he desired.[14] He does not allege that his requests for caselaw were denied, nor is there any record demonstrating that petitioner complained about lack of access to the law library or inadequate legal assistance. Rather, petitioner complains that he had no legal knowledge and was incapable of drafting his own pleadings.

The state submitted the affidavit of Trish Foster, the Administrative Program Manager 2 for the Louisiana Department of Public Safety and Corrections, in which she stated that petitioner had access to two locker boxes that contained his legal materials and personal items and that he could have asked for a pass to the access the library. She admits that petitioner was placed in

_____
[14] Rec. Doc. 17, p. 6.

7

administrative segregation for one week and then was moved to an extended lockdown cell block, but states that throughout that time he could request legal materials from offender counsel. She further states that inmates could request legal materials from offender counsel who make rounds three times a week.[15]

Petitioner acknowledges that the prison had inmate counsel from whom he received assistance. He further acknowledges that he was advised that he could receive copies of caselaw. In August 2013, the inmate counsel substitute advised petitioner that he did not believe that Puderer had any meritorious claims but that if petitioner wanted to persist in filing an application, he would provide petitioner with any forms or materials he needed to draft his own pleading.[16] Thus, before the one-year deadline had expired, Petitioner knew that inmate counsel had not filed the state application. Petitioner could have done so; nothing impeded him from preparing the application for post-conviction relief himself. He was advised that forms and other materials would be provided upon his request. Further, the affidavits of other inmates state that they had physical access to the law library in August 2013.[17] Instead of drafting his own application, petitioner chose to continue his efforts to seek legal help.

Perhaps the best evidence that petitioner was not "prevented" from seeking judicial relief as a result of lack of physical access to the law library or inadequate legal assistance from inmate counsel is the fact that the record shows that he actually sought such relief on various occasions. For example, from November 2012 until May 2013, petitioner filed several requests for production of documents with the state court and also submitted public records requests seeking a copy of the

---

[15] Rec. Doc. No. 12-1, p. 2.
[16] Rec. Doc. No.4-3, pp. 9-10.
[17] Rec. Doc. No. 17-9, p. 4 (Garland Key), p. 5 (Malcolm Perkins), p. 6 (Ricky Johnson).

casefile to the district attorney's office.[18]    In August 2013, he filed a petition for a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal.[19]

In summary, in light of the fact that there is no record of petitioner having complained about lack of access to the law library or inadequate legal assistance, and his legal filings while incarcerated, the undersigned finds that the lack of physical access to the law library and claimed deficiencies of the legal assistance program did not qualify as "state-created impediments" that "prevented" petitioner from seeking relief.    Accordingly, Subsection (B) does not apply.[20]

Further, petitioner does not allege that Subsections (C) or (D) of 28 U.S.C. § 2244(d)(1) apply.    Moreover, they obviously do not, in that his claims involve neither a newly recognized constitutional right nor a newly discovered factual predicate.

Accordingly, as the state correctly argues in its response, Subsection (A) applies in this case, and, for the following reasons, petitioner's application is untimely under that subsection.

As noted, under Subsection (A), a petitioner must bring his § 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."    On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."    28 U.S.C. § 2244(d)(1)(A).    When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration

---

[18] Rec. Doc. 4-2, pp. 29-31, 4-3, p. 2-3; Rec. Doc. 17-4, pp. 2-3; Rec. Doc. 17-12, pp. 2-4; Rec. Doc. 17-13, pp. 2-3.
[19] State. Rec. Vol. 6 of 7, Application for Writ of Mandamus, 2013-K-1117,  singed 8/2/13.
[20] Even assuming that there was a state-created impediment, it was removed no later than August 31, 2013 when the inmates were allowed direct access to the prison law library with a pass from security.  From August 31, 2013 until September 3, 2014, the date when petitioner filed his pro se application for post-conviction relief, 368 days of the limitations period had passed.  By the time the petitioner filed his post-conviction application for relief, the time for filing a federal habeas corpus application had already expired.  Even utilizing a later date of November 4, 2013, when a new inmate counsel substitute began making rounds, 303 days passed before petitioner filed his post-conviction application.  Another 83 days passed from the time the Louisiana Supreme Court denied writs and petitioner filed his habeas petition.  As such, the habeas petition would still be untimely.

of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). *However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."* Id. at 694; *see also* Foreman v. Dretke, *383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).*

*Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See* Foreman, *383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See* Causey v. Cain, *450 F.3d 601, 606 (5th Cir. 2006);* Roberts, *319 F.3d at 693.*

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

As noted, petitioner pled guilty and was sentenced on August 7, 2012. Puderer's conviction and sentence became final thirty (30) days later, on September 6, 2012, because he did not seek reconsideration of the sentence or move for leave to appeal.[21] Therefore, pursuant to 28 U.S.C. § 2244(d)(1)(A), his conviction became final on September 6, 2012, upon the expiration of his period for seeking direct review under state law. Accordingly, the period that petitioner had to file his application for federal habeas corpus relief commenced on that date and expired one year later, i.e., on September 6, 2013, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Here, petitioner unquestionably had applications pending before the state courts during the applicable

---

[21] State v. Counterman, 475 So.2d 336, 338 (La. 1985) (conviction and sentence are final upon the failure of the defendant to make a timely motion for appeal). Under Louisiana law, a criminal defendant has thirty days to file a motion to appeal his conviction or sentence. La. Code Crim. P. art. 914.

one-year period; however, those applications did not entitle him to tolling under § 2244(d)(2) for the following reasons.

Petitioner filed several motions for production of documents in November and December 2012.[22] However, it is clear that such applications for copies of transcripts or other documents are not considered applications "for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

Petitioner filed an "Application for Writ of Mandamus" with the Louisiana Fourth Circuit Court of Appeal on or about August 2, 2013. However, an application for a writ of mandamus does not toll the federal limitations period. Moore v. Cain, 298 F.3d 361 (5th Cir.2002).

It is, of course, true that petitioner filed two state post-conviction applications in September 2014. However, at that point, the one-year period had already expired, and it is clear that applications filed *after* the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler,

---

[22] State Rec. Vol. 2 of 7, Minutes, 11/26/12; Minutes, 12/14/12; State Rec. Vol. 3 of 7, Request for Disclosure of Public Records, signed 11/6/12; Judgment, 11/19/12; Request for Disclosure of Public Records, signed 12/6/12; Judgment, 12/13/12.

533 F.3d at 318.  Petitioner filed no other applications for "State post-conviction or other collateral review."  Therefore, he clearly is not entitled to statutory tolling under § 2244(d)(2).

The Court must next consider equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland v. Florida, 560 U.S. 631, 645 (2010).  Equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir.1999) (citing Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir.1996)).  However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland, 560 U.S. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).  Petitioner must demonstrate a causal relationship between the circumstances on which his claim for equitable tolling rests and the lateness of his filing.  Jones v. Stephens, 541 F. App'x 499, 505 (5th Cir. 2013); Marquez v. Cain, Civ. Action No. 06-2427, 2008 WL 2002278, at *3 (E.D. La. May 6, 2008) (citing Wessinger v. Cain, 358 F. Supp. 2d 523, 527 (M.D. La. 2005)).

In the instant case, petitioner suggests that he is entitled to equitable tolling because he was abandoned by counsel, uninformed about the AEDPA deadline, and was denied access to the prison law library and had difficulty obtaining timely legal assistance at the Louisiana State Penitentiary.  For the following reasons, the Court rejects those arguments.

Petitioner first claims his counsel abandoned him by failing to move to withdraw his guilty plea and file a direct appeal as he requested. The Supreme Court has recognized that an attorney's conduct can constitute an "extraordinary circumstance" where counsel "essentially abandon[s] his client" because "a client [cannot] be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." Maples v. Thomas, 565 U.S. 266, 281 (2012). While complete attorney abandonment may qualify as an "extraordinary circumstance" for equitable tolling purposes, even that does not, in and of itself, excuse the petitioner from his duty of diligence. Manning v. Epps, 688 F.3d 177, 184 n.2 (5th Cir. 2012) (citing Maples, 132 S. Ct. at 924).

Petitioner claims his counsel never responded to his August 2012 letters inquiring about an appeal. Despite his counsel's alleged failure to communicate with petitioner after his sentencing in August 2012, petitioner nonetheless claims that counsel led him to believe that he had actually filed a notice of appeal. Clearly, by November 6, 2012, petitioner was well aware that his counsel had not filed a direct appeal and that his conviction was final as he admitted to such.[23] Thus, petitioner was aware that no appeal had been filed within AEDPA's one-year period for him to seek federal habeas relief. That his counsel had filed no motion to withdraw the guilty plea or notice of appeal from the conviction and sentence did not render it impossible for Puderer, with the exercise of reasonable diligence, to file a timely § 2254 petition in this court.[24] Despite being aware that his conviction was final, petitioner did not attempt to contact his counsel from

---

[23] State Rec. Vol. 3 of 7, Request for Disclosure of Public Records, signed 11/6/12 (Mr. Puderer [sic] conviction is final. As he entered guilty plea and did not appeal the judgment of conviction of sentenced [sic].")

[24] Petitioner has not shown or even argued that his counsel was actually retained to file an appeal or any post-conviction relief application. Indeed, his attorney negotiated the plea agreement (pursuant to which the state agreed not to pursue a rape charge involving a third victim or molestation charges involving petitioner's niece) on behalf of petitioner which waived his right to appeal his sentence. Thus, it is highly unlikely an appeal or post-conviction application was envisioned by counsel or petitioner at the time counsel was retained for trial.

August 31, 2012 until May 8, 2013 when petitioner wrote counsel requesting the entire case file. There is no evidence demonstrating that he attempted to contact him thereafter. Further, petitioner did not seek post-conviction relief from the state courts until September 2014, at least 22 months after he knew his conviction was final. Finally, he did not seek federal habeas relief for over four years.

If counsel's action could be considered abandonment, it was only from his direct appeal obligations, and petitioner has not shown that his counsel's actions in failing to file a direct appeal "stood in his way and prevented timely filing" for post-conviction relief. Robinson v. Davenport, Civ. Action No. 2:15cv462-MHT, 2017 WL 2819041, at *3-4 (N.D. Ala. May 24, 2017) (equitable tolling not justified where there was no causal connection between counsel's failure to file a direct appeal and petitioner's delay in filing his habeas petition), adopted, 2017 WL 2819307 (M.D. Ala. June 29, 2017); Bing v. United States, Nos. CV415–002, CR412–084, 2015 WL 4092699, at *2 (S.D. Ga. July 6, 2015) (no causal connection between counsel's failure to file a direct appeal and petitioner's failure to pursue collateral relief in a timely fashion), adopted, 2015 WL 6756168 (S.D. Ga. Nov. 4, 2015), certificate of appealability denied, No. 15-15680 (11th Cir. May 17, 2016); Mendoza v. Legrand, No. 3:10–cv–00545–LRH–WGC, 2013 WL 876014, *7-8 (D. Nev. Mar. 7, 2013) (alleged deficiency by counsel in failing to consult with petitioner regarding a direct appeal and/or state post-conviction relief did not stand in the way of and prevent the filing of a federal petition); see also Sallie v. Chatman, 34 F.Supp.3d 1272, 1288-89 (M.D. Ga. 2014) (no nexus between "abandonment" and late filing of federal petition where petitioner knew counsel would not represent him 10 months before the expiration of the AEDPA statute of limitations period).

Petitioner next claims that the state district judge led him to believe that he had two years to file for post-conviction relief and he was unaware he needed to file his state application within one year to toll the AEDPA limitations period. During the <u>Boykin</u> colloquy, the state district judge advised petitioner that there was "a two-year time period during which you can seek post-conviction relief."[25]  The state district judge was fulfilling the responsibility set forth under state law, i.e., La. Code Crim. P. art. 930.8(C)(2004).[26]  There is, however, no similar obligation on the part of the state district judge to notify petitioner of any possible rights and remedies which he may have under *federal* law, and petitioner's assertion that he mistakenly relied on the two-year limitations period under state law or lacked instructions as to the federal limitations period are not extraordinary circumstances warranting equitable tolling. <u>Santinac v. Cain</u>, Civ. Action No. 06-6260, 2011 WL 765742, at *2 (E.D. La. Feb. 23, 2011) (Zainey, J) (Order and Reasons) (citing <u>Cooper v. Travis</u>, No. 08-0021, 2010 WL 3523022, at *2 (E.D. La. Sept. 2, 2010)) (Africk, J) (Order and Reasons).

It is further clear that a prisoner's pro se status, lack of legal training, and mere ignorance of the law do not constitute rare and exceptional circumstances warranting equitable tolling. <u>See, e.g.</u>, <u>Felder v. Johnson</u>, 204 F.3d 168, 171-72 (5th Cir. 2000) (prisoner's pro se status and lack of knowledge of filing deadline did not warrant equitable tolling); <u>accord</u> <u>Gonzales v. Wilkinson</u>, 269 F. App'x 481, 486 (5th Cir. 2008).  Neither a petitioner's "pro se status nor his unfamiliarity with the law suffices as a basis for equitable tolling." <u>Madden v. Thaler</u>, 521 F. App'x 316, 323 (5th Cir. 2013); <u>accord</u> <u>Nelson v. Quarterman</u>, 215 F. App'x 396, 398–99 (5th Cir.2007) ("[A]

---

[25] State Rec. Vol. 3 of 7, <u>Boykin</u> Colloquy and Sentencing Transcript, p. 8, 8/7/12.

[26] Louisiana Code of Criminal Procedure art. 930.8(C) provides: "At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing. If a written waiver of rights form is used during the acceptance of a guilty plea, the notice required by this Paragraph may be included in the written waiver of rights."

defendant's pro se status will not excuse an untimely habeas petition."); see also Smallwood v. Cain, 12–2812, 2013 WL 5757663, at *10 (E.D. La. Oct. 23, 2013) ("The fact that Smallwood is not educated in the law or is reliant upon assistance from inmate counsel on post-conviction does not warrant equitable tolling.").

Petitioner's administrative segregation and extended lockdown also do not constitute rare or exceptional circumstances warranting equitable tolling. Madis v. Edwards, 347 F. App'x 106, 108 (5th Cir. 2009) (finding transfers between units, separation from legal materials, and administrative segregation are not rare or exceptional circumstances meriting equitable tolling); see also Dodd v. United States, 365 F.3d 1273, 1283 (11th Cir. 2004) ("Lockdowns and periods in which a prisoner is separated from his legal papers are not 'exceptional circumstances' in which equitable tolling is appropriate.").

Petitioner also once again argues that he did not have access to the law library and was denied adequate legal assistance. However, as already noted, he has not established that he was denied adequate access. Furthermore, ineffective assistance of inmate counsel is also not a basis for equitable tolling. Reed v. Keith, Civ. Action No. 13–1505, 2014 WL 940587, at *4 (W.D. La. March 11, 2014) (citing Martinez v. Johnson, 255 F.3d 229, 239 (5th Cir. 2001)); Manning v. Warden, Claiborne Parish Detention Center, Civ. Action No. 3:12–cv–2753, 2013 WL 596348, *5 n.3 (W.D. La. Jan. 22, 2013) (petitioner's claim of inadequate inmate counsel did not warrant equitable tolling), adopted, 2013 WL 596345 (W.D. La. Feb. 15, 2013), aff'd, Manning v. Sumlin, 540 F. App'x 46 (5th Cir. 2013) (per curiam).

Finally, petitioner claims his attorney did not provide him with a copy of the case file until April 2014. Petitioner submitted an unsigned letter to counsel dated May 8, 2013 in which he

requested the entire case file.[27]  There is no evidence that petitioner made any additional requests for the file nor does petitioner suggest that he did so.  On February 4, 2014, counsel advised the file was ready to be picked up.[28]  Petitioner claims he did not receive the file until April 2014. Petitioner, however, fails to state what evidence or material from his case file was required to file either his state post-conviction application or his habeas petition.  The record establishes that both prior to or immediately after his August 7, 2012 sentencing, petitioner was aware of at least some of the claims he eventually raised in his habeas petition.[29]  Additionally, by December 2012, petitioner possessed a copy of his plea colloquy and sentencing transcript.  Petitioner simply has not shown that lack of possession of the entire case file prevented him from timely filing his petition.  Hatcher v. Quarterman, 305 F. App'x 195, 2008 WL 5210640, at *1 (5th Cir. 2008) (Table. Test in Westlaw) (per curiam)  (denying application of equitable tolling where petitioner failed to show that "not having possession of his trial counsel's file prevented him from filing his application, as opposed to proving his claims."); Tiner v. Treon, 232 F.3d 210, 2000 WL 1273384, at *1 (Table, Text in Westlaw) (5th Cir. 2000) (per curiam) (attorney's failure to provide petitioner copies of state records did not constitute rare and exceptional circumstances warranting equitable tolling).

The Court is not aware of any other circumstance in this case that might warrant equitable tolling.  Therefore, there is no basis for finding that the limitations period should be equitably tolled.

---

[27] Rec. Doc. No. 4-2, p. 21.

[28] Rec. Doc. No. 4-2, p. 23.

[29] Petitioner was present in court when his counsel argued motions relating to lack of jurisdiction and improper venue. State Rec. Vol. 1 of 7, Transcript, 12/12/11; Transcript, 3/26/10; State Rec. Vol. 2 of 7, Minutes, 12/12/11; Minutes, 3/20/12.  Additionally, petitioner's referred to these issues and others in his letters to counsel dated July and August 2012.  Rec. Doc. 4-2, pp. 3-4, 13-15,17-19.

Lastly, the Court notes that the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). That said, the Supreme Court took care to note: "We caution, however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " Id. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

A petitioner therefore faces a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added). Here, petitioner has presented no new evidence of the type or caliber referenced in Schlup. Accordingly, he has not met "the threshold requirement" for McQuiggin to apply. McQuiggin, 133 S. Ct. at 1928. As a result, the "actual innocence" exception does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than September 6, 2013, in order to be timely. His federal application was not filed until January 10, 2017, and, therefore, it is untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Darryl Puderer be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this 26th  day of January, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[30] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

19